**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

MISAEL CORDERO,

      Plaintiff,

    v.

NICOLE MARTIN, *CORRECTIONAL OFFICER NEW JERSEY STATE PRISON,*

      Defendant.

</td><td>

Civil Action No. 21-3882 (GC) (JTQ)

**OPINION**

</td></tr>
</table>

**CASTNER, District Judge**

    **THIS MATTER** comes before the Court on a motion for summary judgment under Federal Rule of Civil Procedure (Rule) 56 filed by Defendant Nicole Martin ("Motion"). (ECF No. 50.) *Pro se* Plaintiff Misael Cordero opposed the Motion (ECF No. 54), and Defendant filed a reply in further support of the Motion (ECF No. 55). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Motion is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

    At all times relevant to this lawsuit, Plaintiff was incarcerated at New Jersey State Prison ("NJSP"). (ECF No. 54 ("Pl. SMF") ¶ 4; ECF No. 55-1 ¶ 4.) In 2019, Plaintiff was transferred to

---

[1] On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).

East Jersey State Prison ("EJSP"), and he is currently an inmate at EJSP. (Pl. SMF ¶¶ 1, 5; ECF No. 55-1 ¶¶ 1, 5.) Incarcerated since 1993, Plaintiff has filed several lawsuits; however, he has never filed any litigation dismissed as frivolous. (Pl. SMF ¶ 6; ECF No. 55-1 ¶ 6.)

During the relevant time period, Defendant was a Communications Operator at NJSP, a position she has held for over twenty years. (Pl. SMF ¶¶ 13-14; ECF No. 55-1 ¶¶ 13-14.) Defendant's responsibilities include identifying visitors, maintaining a log of incoming and outgoing communications, entering information into records and overtime lists, receiving, sorting, and distributing incoming mail and maintaining schedules of deliveries, and receiving and handling other items such as paychecks. (Pl. SMF ¶ 15; ECF No. 55-1 ¶ 15.) Furthermore, Plaintiff has never met Defendant. (Pl. SMF ¶ 12; ECF No. 55-1 ¶ 12.)

The NJSP Inmate Handbook provides that all incoming correspondence is inspected for contraband; however, legal correspondence is to be opened and inspected only in the presence of the inmate to whom it is addressed. (Pl. SMF ¶¶ 17-18; ECF No. 55-1 ¶¶ 17-18.) Inmates are called to a booth manned by an officer to collect regular mail. (Pl. SMF ¶ 19; ECF No. 55-1 ¶ 19.) Legal mail is delivered by an officer to inmates' cells, together with a G-21 form. (Pl. SMF ¶¶ 20-21; ECF No. 55-1 ¶¶ 20-21.) Sometimes, the processing officer does not complete a G-21 form, and, as a result, the legal correspondence is processed as regular mail, subjecting it to automatic opening and reading outside of the prisoner's presence. (Pl. SMF ¶ 21; ECF No. 55-1 ¶ 21.)

The G-21 form includes, in relevant part, three signature lines: "Processed by," "Issued by," and "Accepted by," in the following format:

| | | |
|---|---|---|
| Processed by: (Print and Sign) | | Date |
| Issued by: (Officer Print and Sign) | Wing | Date |
| Accepted by Inmate: (Print and Sign) | | Date |

(ECF No. 50-2, Ex. I ("G-21 Forms") ("Traffic Control Officer" line omitted).)

According to Plaintiff's declaration, "Defendant Martin and other New Jersey State Prison employees who worked at the prison mailroom have a history of tampering with the incoming and outgoing legal mail of [Plaintiff and other] inmates, including opening and reading prisoners' legal correspondences outside their presence," and such "constitutional violations have led to many lawsuits filed by prisoners." *(*ECF No. 54, Pl. Decl. ("Pl. Decl.") ¶¶ 2-5; *see also* ECF No. 50-2, Ex. A ("Pl. Dep.") at 11:6-11, 24:3-10 (stating that he had spoken with "around 50 or 60" inmates about mail "troubles" and that "this happened to me in other instances a whole bunch of times" in 2016, 2017, and 2018).) This alleged pattern continued from 2016 through 2019, and "[c]onsequently, in 2017 the prison Administrator informed one of those inmates [whose mail was opened and read outside his presence] that they were retraining the mailroom staff and re-emphasizing to them the importance of the legal mail process on a daily basis." (Pl. Decl. ¶ 4.) Defendant was working inside the mailroom during this time period, her main duty was to receive, sort, and distribute incoming legal mail and maintain delivery schedules, and she was among the officers who in 2017 were retrained and repeatedly directed not to open or read prisoners' legal mail outside their presence. (*Id.* ¶ 5.)

On April 10, 2016, Plaintiff filed an administrative inquiry complaining that he received "a legal letter (OPRA)," which "was processed as regular mail." (ECF No. 54, Pl. Ex. 5 ("Pl. 2016-2018 Grievance Rec.") at 1.) Plaintiff asserted that "[t]his is not the first time this happens"

and that the "constitutional problem" must be corrected. (*Id.*) Gerald Doran noted his request and closed the matter. (*Id.*)

On April 1, 2017, Plaintiff submitted an inquiry stating that, on March 24, 2017, he gave a legal package to "the rookies that were working that day," "one of the rookies" processed the package, and he was provided with a copy of the postage remit. (*Id.* at 3.) On March 31, 2017, the package was returned to Plaintiff opened with a sticker stating that it needed postage, although it was stamped with 49-cent postage (which was below the required fee). (*Id.*) Doran responded that postage was required unless the mail was sent with over-sized packaging or special postage. (*Id.*) On August 11, 2017, the Plaintiff complained that, according to court records, legal documents were mailed to him twelve days earlier and they had not yet been received. (*Id.* at 4.) However, according to Sergeant Sean Patterson's response, no mail had been received. (*Id.*)

Plaintiff filed another inquiry on January 20, 2018, stating that his incoming and outgoing legal mail "is being tampered with." (*Id.* at 2 ("An incoming legal letter clearly marked, closed, and undamaged was opened and read outside my presence. The letter was then processed as regular mailed [sic]. An outgoing legal letter was also opened and read outside my presence, and processed as regular mail before being returned to me.").) Patterson asked Plaintiff to provide a copy of the envelopes. (*Id.*) On or about February 3, 2018, Plaintiff sent Patterson the copies. (*See* ECF No. 54, Pl. Ex. 4 at 1-6.) Sergeant Patterson then closed the inquiry. (Pl. 2016-2018 Grievance Rec. at 2.)

On November 18, 2016, NJSP inmate Rasool McCrimmon filed an inquiry concerning an incident involving his legal mail that occurred on November 17, 2016. (ECF No. 54, Pl. Ex. 5 ("McCrimmon Grievance R.") at 1.) McCrimmon stated that he sent out two manila folders with legal mail, both envelopes were returned stapled together, one envelope was open with his motion

removed from the envelope, and there was a note stating that the mailing was not approved. (*Id.*) Doran noted McCrimmon's position that approval was not required to send out legal mail. (*Id.*) McCrimmon filed a grievance regarding the incident on December 12, 2016, and Steven Johnson stated in response that "[m]ailroom staff will be reminded to look closely for legal mail." (*Id.* at 2.)

In 2017, McCrimmon submitted inquiries and grievances regarding two incidents (on August 15, 2017 and September 19, 2017) in which his legal mail was opened out of his presence and distributed to him as regular mail (*i.e.*, stapled to the envelope and without a legal mail receipt). (*Id.* at 3-8.) In response to these filings, Peterson and Johnson informed McCrimmon that the mailroom was provided updates and reminders regarding the proper procedures for handling legal mail. (*Id.*) Johnson asked McCrimmon to "provide the dates that the legal mail was received outside the proper channels so we can look at and re-train the officers that would have processed the mail." (*Id.* at 6.) "We have been training officers to identify legal mail before it is being placed in the machine." (*Id.*) McCrimmon responded to this request by stating that his "legal mail is being opened continuously." (*Id.*) Subsequently, Johnson stated that "[w]e are training and re-emphasizing the legal mail process and the importance on a daily basis." (*Id.* at 8.)

The fourth and final incident involving McCrimmon's legal mail took place on August 14, 2018. McCrimmon complained that, when he returned to his cell, he found opened legal mail that was distributed with the regular mail. (*Id.* at 9.) Patterson stated that mailroom staff did not intentionally open legal mail and that they were advised to exercise extra caution when processing mail. (*Id.* at 9-10.)

On June 11, 2019, an officer delivered a piece of legal correspondence from the Third Circuit to Plaintiff ("June 11, 2019 Legal Correspondence"). (ECF No. 54 ("Pl. Br.") at 2-3; ECF

No. 55-1 ¶ 24.) The back of the envelope was missing, and only its front portion with the sender and recipient remained; the correspondence, envelope, and G-21 form ("June 11, 2019 G-21") were stapled together; the processing officer's signature was illegible; and there was no name printed on the June 11, 2019 G-21 to indicate who processed the mailing. (Pl. Br. at 2-3; ECF No. 55-1 ¶ 25; G-21 Forms at 1; ECF No. 50-2, Ex. J ("June 2019 Envelopes") at 1).) According to Plaintiff's deposition testimony: "It was only the outside part, the front part of the envelope. Everything else in the envelope. Everything else in the envelope had been thrown away. And the legal mail had been attached to it with a staple. So the envelope was completely incomplete. Just the front part of it, that's it." (Pl. Dep. at 15:17-22.) The June 11, 2019 G-21 also had very faint and undecipherable writing on the "Issued by" line. (G-21 Forms at 1.)

On June 17, 2019, Plaintiff received a second piece of legal correspondence (this time from the district court) that was processed and opened in the same way as the June 11, 2019 Correspondence ("June 17, 2019 Legal Correspondence" & "June 17, 2019 G-21"). (Pl. Br. at 3; ECF No. 55-1 ¶ 28; G-21 Forms at 2; June 2019 Envelopes at 2.)

Plaintiff filed an inquiry regarding the June 11, 2019 Legal Correspondence on June 16, 2019. (ECF No. 54, Pl. Ex. 3 ("Pl. 2019 Grievance R..") at 2.) According to Plaintiff's inquiry:

> On 6-11-19 a [sic] legal correspondence from the Third Circuit Court of Appeals was delivered to [Plaintiff] that has been opened outside [his] presence. The legal documents were outside the envelope, and the envelope has been ripped apart and thrown away except for the front part of it. This is an ongoing unconstitutional practice and a clear violation of [his] constitutional rights. Thus [he] respectfully to be corrected [sic]. Thank you for your anticipated help.

(*Id.*) On June 24, 2019, Patterson responded as follows: "Staff reminded to utilize caution when processing mail." (*Id.*)

On June 22, 2019, Plaintiff inquired about the second incident, stating:

> On 6-18-19 [sic] a legal letter from the district court was delivered to [Plaintiff] that it has been opened outside [his] presence. The envelope has been thrown away, except for the front part of it to which the legal documents have been stapled to. Said action is a flagrant violation of [Plaintiff's] constitutional rights, and it keeps happening despite [his] privous [sic] complaints. Thank you for your anticipated assistance.

(*Id.*) Patterson responded on July 8, 2019 that "[s]taff have been reminded to utilize caution when processing mail." (*Id.*) Relying on these staff reminders, Plaintiff states that Defendant was "verbally" disciplined for opening prisoners' legal mail outside their presence. (Pl. SMF ¶ 16; Pl. Decl. ¶ 12; Pl. 2019 Grievance R.) However, Defendant's employment history does not show any infractions or disciplinary actions, and she has received two commendations for her work. (ECF No. 50-2, Ex. G ("Work History") at 1-2.)

Plaintiff no longer possesses either the June 11, 2019 Legal Correspondence or the June 17, 2019 Legal Correspondence, and he does not recall their contents. (Pl. SMF ¶ 31; ECF No. 55-1 ¶ 31; Pl. Dep. at 16:13-19.) There was no damage to the two items, except the envelopes. (Pl. SMF ¶ 32; ECF No. 55-1 ¶ 32.) "Plaintiff was satisfied with Sergeant Patterson's responses for the purpose of not having to file an administrative appeal." (Pl. Br. at 3-4 (citing Pl. 2019 Grievance R.; Pl. Dep. at 22:7-23:14).)

Plaintiff does not report any other subsequent problems with his legal mail at NJSP after June 17, 2019, and he was transferred from NJSP to EJSP at some point in 2019. (Pl. Dep. at 7:13-19, 42:8-13.) Plaintiff asserts that he was transferred in retaliation for a lawsuit he won against "the Administration" and that he filed a lawsuit regarding the transfer, which is still pending. (Pl. Decl. ¶ 7.) Plaintiff further claims that he has suffered "many harms in addition to filing fees and postage fees," spending "money by paying ten cents for every page [he] had printed related to this case." (*Id.* ¶ 22.)

On or about February 24, 2021, Plaintiff filed his initial complaint ("Complaint") pursuant to 42 U.S.C. § 1983, naming "John Doe" as the only Defendant. (ECF No. 1 at 4.)  According to Plaintiff, he had to list a John Doe because "Defendant Martin had intentionally failed to spell her name on the G-21 Form even though she was required to do so, and signed her name with a scribble in order to hide her identity." (Pl. Decl. ¶ 8.)  "[Plaintiff] did not know the name of Defendant Martin, but [he] knew that the correctional officer who had processed my legal correspondences (which in this case was Defendant Martin) was the one who opened and read them outside my presen[ce]." (*Id.* ¶ 9; *see also* ECF No. 55-1 ¶ 8 ("Plaintiff did not know the name of any individual defendant." (citing Pl. Dep. at 47:5-9)).)  In his Complaint, Plaintiff alleges that his legal mail has been tampered with, opened, and read outside of his presence on numerous occasions beginning in 2016. (ECF No. 1 at 6.)  "The incidents leading to this lawsuit, however, are the ones that happened in 2019," *i.e.*, Defendant John Doe's improper actions opening and reading Plaintiff's legal mail on two occasions in June 2019. (*Id.* at 6-7.)  Plaintiff further alleges that this individual (an experienced correctional officer who knew that opening and reading legal mail outside of the inmate's presence is illegal and a constitutional violation) intentionally and maliciously opened and read the June 2019 correspondence, has opened and read other inmates' legal mail, never prints his name on the G-21 forms, and signs the forms with a "scribble" to hamper inmates from filing grievances against him. (*Id.* at 6-7.)  Plaintiff requests injunctive relief as well as punitive, nominal, and other damages authorized by law. (*Id.* at 10.)

On June 10, 2021, the Honorable Peter G. Sheridan, U.S.D.J., granted Plaintiff's application to proceed *in forma pauperis*. (ECF No. 2.)  On March 1, 2022, Judge Sheridan ordered that Plaintiff's Complaint shall proceed past screening except for his claim for injunctive relief, which was dismissed as moot due to his transfer to a different facility. *Cordero v. Doe*, No. 21-

3882, 2022 WL 605721, at \*3 (D.N.J. Mar. 1, 2022). Plaintiff was provided ninety days to submit an amended complaint naming the unidentified Defendant as well as leave to submit a request for a subpoena under Federal Rule of Civil Procedure 45(c)(2) describing a prison official he believed had the ability to produce documents identifying John Doe together with any other information that would help identify this unknown individual (*e.g.*, the dates and times Plaintiff alleges his legal mail was opened and read by the officer). *Id.*

On June 10, 2022, the Honorable Douglas E. Arpert, U.S.M.J., granted Plaintiff's motion for leave to file a third-party subpoena and for a 120-day extension of time to serve the Defendant. (ECF No. 6.) The subpoenas were served on Bruce Davis, Administrator of NJSP, and Omar Mendoza, the mailroom sergeant, on July 1, 2022. (ECF No. 7.) On March 30, 2023, Magistrate Judge Arpert noted that the incorrect subpoena forms were sent to Plaintiff (and that Plaintiff failed to file them out properly) and ordered the Attorney General of the State of New Jersey ("Attorney General") to ascertain the identity of the John Doe(s) and their addresses where they may be served within 45 days of the date of the order. (ECF No. 8.) On August 15, 2023, Magistrate Judge Arpert denied Plaintiff's motion to compel the Attorney General to comply with the March 30, 2023 order, but he also granted Plaintiff leave to serve a third-party subpoena on the Attorney General seeking documents identifying and naming the John Doe(s) who signed the two mail receipts. (ECF No. 14.) This subpoena was returned executed on September 7, 2023. (ECF No. 17.) In a letter dated September 21, 2023, the Attorney General stated that, "[b]ased on information provided by the New Jersey Department of Corrections, the identity of the person who processed and executed the two mailroom forms on the 'Processed by' line is **Comm Op Nicole Martin**." (ECF No. 50-2, Ex. D at 1.)

Plaintiff's Amended Complaint was filed on October 3, 2023, naming Martin as the

Defendant and alleging that she intentionally opened and read his legal mail outside his presence and tampered with the G-21 forms to cover up her violations. (ECF No. 18 at 4.) Apart from identifying the allegedly responsible party, Plaintiff's allegations are mostly identical to the allegations in his original Complaint. However, Plaintiff additionally alleges that he filed this lawsuit because of Defendant's scribbled signature and intentional failure to print her name on the G-21 forms, which prevented him from identifying her. (*Id.* at 7-8.) According to Plaintiff, he was "stonewalled and prevented by the Attorney General and some employees of the Department of Corrections from obtaining Defendant Nicole Martin's name." (*Id.* at 8.) "Plaintiff sought the assistance of this Court, and after various subpoenas and two Orders from this Court, Plaintiff was finally provided with the name of Defendant Nicole Martin which he received four days ago." (*Id.*) Despite Judge Sheridan's dismissal of his claims for injunctive relief, Plaintiff requests both monetary and injunctive relief. (*Id.* at 11.)

On October 25, 2024, Defendant moved for summary judgment. (ECF No. 50.) Plaintiff opposed the Motion (ECF No. 54), and Defendant filed a reply (ECF No. 55).

## II.   **STANDARDS OF REVIEW**

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. Care Alternatives*, 81 F.4th 361, 369 (3d Cir. 2023) (citing *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014)); *see also* Fed. R. Civ. P. 56(a).

It is well established that the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation omitted). The moving party may also meet her burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (quotations and citations omitted).

Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248 (citation omitted). "If reasonable minds could differ as to the import of the evidence," summary judgment is not appropriate. *Id.* at 250-51 (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Nonetheless, summary judgment "cannot be avoided by resorting to speculation, or statements of personal opinion or mere belief; indeed, 'inference based on speculation or conjecture does not create a material factual dispute.'" *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 527 (D.N.J. 2013) (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)), *aff'd*, 649 F. App'x 239 (3d Cir. 2016)); *see also Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) (noting that a party opposing summary judgment must rely on

facts, not opinions or conclusions); *Rakowski v. Brigantine*, Civ. No. 19-21847, 2022 WL 326992, at *1 (D.N.J. Feb. 3, 2022) ("[M]ere allegations, conclusions, conjecture, and speculation will not defeat summary judgment." (citing *Orsatti v. N.J. State Pol.*, 71 F.3d 480, 484 (3d Cir. 1995)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," no genuine issue for trial exists and summary judgment shall be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## III.    DISCUSSION

Defendant argues that: (1) she is entitled to qualified immunity because it is not clearly established that "two isolated incidents" in which Defendant allegedly opened Plaintiff's legal mail outside of his presence amounted to an unlawful pattern or practice (ECF No. 50-3 at 6-12); (2) Plaintiff's request for injunctive relief should be denied as moot (*id.* at 12-14); (3) additionally, Plaintiff's request for injunctive relief should be denied because there is no ongoing violation of federal law (*id.* at 14-16); and (4) Plaintiff's claim for punitive damages should be dismissed because Defendant did not exhibit reckless or callous behavior (*id.* at 16-18). The Court agrees with Defendant and grants summary judgment in her favor.

### A.    Plaintiff's Individual-Capacity First Amendment Claim for Damages and the Qualified Immunity Doctrine

Here, Plaintiff's claims for both monetary and injunctive relief arise out of the alleged opening of his legal mail outside of his presence.[2] As Judge Sheridan noted in his prior screening opinion, "[a] plaintiff may state a First Amendment claim against a defendant who read his legal materials if he alleges that there was a pattern or practice of opening and reading his legal materials outside of his presence." *Cordero*, 2022 WL 605721, at *2 (citing *Schreane v. Holt*, 482 F. App'x

---

[2]    The Court construes Plaintiff's Amended Complaint as alleging a damages claim against Defendant only in her individual capacity and a claim for injunctive relief against Defendant in her official capacity.

674, 676-77 (3d Cir. 2012)). However, absent either a pattern or practice of improper mail handling, or evidence of improper motive, a plaintiff fails to state a First Amendment violation. *See McCrimmon v. Johnson*, No. 18-16281, 2022 WL 17352193, at *5-6 (D.N.J. Nov. 30, 2022); *Cordero*, 2022 WL 605721, at *2; *Hale v. Pa. Dep't of Corr.*, No. 07-345, 2010 WL 3791833, at *3 (M.D. Pa. Sept. 16, 2020).

Implementing these constitutional requirements, New Jersey Administrative Code Title 10A, Chapter 18 (Mail, Visits and Telephone), Subchapter 3 (Legal Correspondence) governs the processing of legal mail at New Jersey State Prison. N.J. Admin. Code §§ 10A:18-3.1 to -3.13. The state code provides that "[i]ncoming legal correspondence shall be opened and inspected only in the presence of the inmate to whom it is addressed," and that "[i]ncoming legal correspondence shall not be read or copied." *Id.* § 10A:18-3.4(b). It does not authorize the opening or inspection of legal mail outside of the addressee's presence.

An award of qualified immunity protects a government official from suit for damages "insofar as [her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). This inquiry is limited to the law at the time of the incident, as "an official could not reasonably be expected to anticipate subsequent legal developments." *Harlow*, 457 U.S. at 818. The court must determine whether: (1) the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 557 (3d Cir. 2017) ("We first determine whether a right has been violated. If it has, we then must decide if the right at issue was clearly established when violated such that it would have been clear to a reasonable person that her conduct was unlawful."

(citation omitted)). Those two inquiries need not be addressed in sequence; instead, courts are entitled to "exercise their sound discretion" and decide which issue to first address. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The defendant official is entitled to qualified immunity if either prong is not satisfied. *See id.* at 244-45. "[T]he party asserting the affirmative defense of qualified immunity" bears the burden of persuasion on both prongs at summary judgment. *Mack v. Yost*, 63 F.4th 211, 227 (3d Cir. 2023) (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014)).

Under the second prong, "the right must be defined beyond a high level of generality," *Thomas v. City of Harrisburg*, 88 F.4th 275, 284 (3d Cir. 2023) (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)), but there need not be "a case directly on point for a right to be clearly established," *id.* (citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021)). In order for the right to be clearly established, however, "[then-]existing precedent must have placed the . . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (citations omitted); *see also Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818-19.

For qualified-immunity purposes, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (quoting *Fields v. City of Philadelphia*, 862 F.3d 353, 361 (3d Cir. 2017)); *see also Wesby*, 583 U.S. at 63 (stating that, to be clearly established, a legal principle must be dictated by controlling authority or a robust consensus of cases of persuasive authority). Courts "first look to factually analogous precedents of the Supreme Court and the Third Circuit." *See James v. N.J.*

14

*State Pol.*, 957 F.3d 165, 170 (3d Cir. 2020) (citing *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247–
48 (3d Cir. 2016)).   Courts next examine persuasive authorities, such as nonprecedential opinions
within this circuit and decisions from other courts of appeals.  *See id.*  "If the scope of a particular
constitutional right is 'highly fact-specific,' it can be reasonable for governmental officials to err
in believing that their conduct comports with the law."  *McCrimmon*, 2022 WL 17352193, at *6
(quoting *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 859 (3d Cir. 2012)).

Here, Defendant argues that it is not clearly established that the two isolated instances in
June 2019 in which Defendant allegedly opened legal mail outside of Plaintiff's presence
constitutes an unlawful pattern or practice.  (ECF No. 50-3 at 8).  Defendant further asserts that
there is no evidence that she acted with an improper motive.  *(Id.)*  Plaintiff responds that
Defendant's actions were "intentional and malicious" and that he presents evidence that Defendant
and NJSP engaged in a pattern of opening and reading legal mail outside of the presence of Plaintiff
and other inmates.  (Pl. Br. at 7-12.)  The Court concludes that, under step one of the qualified
immunity analysis, Plaintiff fails to point to specific facts raising a triable issue as to whether
Defendant's actions were intentional or malicious.  The Court then determines that Defendant
meets her burden to show that the alleged "pattern or practice" of interfering with legal mail in this
case does not violate a clearly established constitutional right under the second prong of the
qualified immunity doctrine.

## 1.     Improper Motive

It is undisputed that the "pattern or practice" requirement does not apply if the plaintiff
presents evidence that the defendant acted with an improper motive.  *See Hale*, 2010 WL 3791833,
at *3 ("Isolated incidents of opening legal mail outside of an inmate's presence, *without any*
*evidence of improper motive*, is nothing more than an assertion of negligence, and is insufficient

to establish a constitutional violation." (emphasis added) (citations omitted)).  Plaintiff contends that there is evidence that Defendant's intentionally and maliciously opened his legal mail, *i.e.*, (1) prior to the June 2019 incidents, Plaintiff's and other inmates' legal mail was opened and read outside of their presence in 2016, 2017, and 2018 (Pl. Br. at 8, 10); (2) the violations were so rampant that, in 2017 (when Plaintiff was working in the mailroom receiving, sorting, and distributing mail) the NJSP Administrator informed an inmate (McCrimmon) that "[w]e are retraining and re-emphasizing the legal mail process and importance on a daily basis" (*id.* at 10 (emphasis omitted) (quoting McCrimmon Grievance R. at 8)); (3) in June 2019, Defendant, an experienced mailroom employee, intentionally violated NJDOC regulations concerning the handling of legal mail, intentionally failed to print her name on the G-21 forms and signed her name with a scribble to hide her identity, and maliciously destroyed and discarded the envelopes (except for the front portions) (*id.* at 9, 13); and (4) Defendant ignored Plaintiff's letters and subpoena to prevent Plaintiff from obtaining her name and seeking redress, and it required a court order directing the Attorney General to provide Defendant's name to Plaintiff "for Defendant to come forward and confess to the Office of the Attorney General that she was the one who processed, opened, and read Plaintiff's legal mail outside his presence" (*id.* at 9 (citing Pl. Decl. ¶ 10; Pl. Dep. at 47:2-49:1)).

To the extent that Plaintiff relies on pre-2019 incidents in which Plaintiff's (or another inmate's) legal mail was allegedly opened outside of the presence of the inmate, Plaintiff expressly alleges in his Amended Complaint that, while "[s]ome of these incidents occurred in 2016, 2017, 2018, and 2019," "[t]he incidents leading to this lawsuit, however, are the ones that happened in 2019." (ECF No. 18 at 6.)  As Judge Sheridan explained in screening Plaintiff's initial Complaint, "Plaintiff alleges his legal mail has [been] tampered with, opened, and read outside of his presence

on numerous occasions beginning in 2016 at NJSP." *Cordero*, 2022 WL 605721, at *1. "However, as Plaintiff makes clear, the facts giving rise to this action concern Defendant John Doe improperly opening and reading his legal mail on two occasions in June, 2019." *Id.*

In any event, "the tenet that the defendant's § 1983 liability must be predicated on [her] direct and personal involvement in the alleged violation has deep historical roots in tort law principles." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). The Supreme Court accordingly has required "a 'showing of direct responsibility' by the named defendant" and "eschew[ed] any 'theory of liability in which defendants played 'no affirmative part in depriving any[one] . . . of any constitutional rights.'" *Id.* at 290 (citations omitted).

Plaintiff indicates in his declaration that "Defendant Martin," "other New Jersey State Prison employees," and "New Jersey State Prison" had a history of opening and reading inmate legal mail. (Pl. Decl. ¶¶ 2-5.) However, Plaintiff does not point to "specific facts" raising a genuine issue of material fact as to Defendant's direct participation in such conduct, *Anderson*, 477 U.S. at 250. Although Defendant was "working inside the mailroom of New Jersey State Prison during 2016-2019 and her main duty was to receive, sort, and distribute incoming legal mail within NJSP and maintain schedules of deliveries" (Pl. Decl. ¶ 5; *see also* ECF No. 50-2, Ex. E ("Def. Answers to Pl. Interrogatories") ¶ 1 ("Defendant has worked for NJDOC at NJSP as a Communications Operator since 10/2003.")), there is no evidence connecting her to the incidents that allegedly occurred in 2016, 2017, and 2018. For instance, Plaintiff does not cite to any G-21 forms executed by Defendant concerning any pre-2019 pieces of legal mail (*see* G-21 Forms), and neither Plaintiff's 2016-2018 administrative grievance documentation nor McCrimmon's administrative filings refer to Defendant or allege that the processing officer failed to print his or her name or used an illegible signature on the respective G-21 forms (*see* Pl. 2016-2018 Grievance

R.; McCrimmon Grievance R.). In fact, with respect to the August 15, 2017 incident, McCrimmon explicitly claimed that "there was no legal mail receipt to go with [the mailing]." (McCrimmon Grievance R. at 3.) Furthermore, McCrimmon's First Amendment claim was dismissed on summary judgment. *See McCrimmon*, 2022 WL 17352193, at *1. The Honorable Brian R. Martinotti, U.S.D.J., specifically concluded that "[t]here have been no facts submitted to show whether these instances [of McCrimmon's legal mail being opened] were done intentionally or inadvertently."[3] *Id.* at *7.

Plaintiff relies on the non-precedential decision in *Diaz v. Palakovich*, 448 F. App'x 211 (3d Cir. 2011), in which, according to Plaintiff, the Third Circuit reversed the grant of summary judgment to prison officials because the district court had ignored prior legal mail violations. (Pl. Br. at 9-10.) Plaintiff asserts that it is "extremely unfair" for Defendant to "intentionally omit" the incidents prior to 2019 in which his legal mail was opened and read outside his presence and to "misrepresent to the Court" that this violation only occurred twice. (*Id.* at 10.)

*Diaz* is readily distinguishable. Denying leave to amend on futility grounds, the district court refused to consider several prior legal mail violations in its analysis on the grounds that Diaz's administrative grievances with respect to such incidents had not been fully exhausted. *Diaz*, 448 F. App'x at 216. Only considering such (purportedly fully exhausted or undisputed) incidents, the district court indicated that, at most, there were two occasions in which the inmate's legal mail

---

[3]    Defendant was not a named party in the *McCrimmon* litigation. *See McCrimmon*, 2022 WL 17352193, at *1. "[T]his [present] lawsuit is the only matter where Defendant has been sued by an inmate who has claimed their constitutional rights were violated." (Def. Answers to Pl. Interrogatories ¶ 3.)

    In addition, to the extent that Plaintiff relies on statements made to him by other (unidentified) inmates regarding their "troubles" with the mail (Pl. Dep. at 11:6-11), and other alleged (but unreported) problems that Plaintiff had with the mail (*id.* at 10:13-21), such bald assertions are insufficient to defeat summary judgment, especially where Plaintiff does not point to any specific facts indicating that Defendant was involved in these various alleged incidents.

was opened outside his presence, and it concluded that two instances did not constitute a sufficient pattern or practice. *Id.* The Third Circuit determined that "the District Court's failure to consider certain grievances related to a pattern of opening legal mail outside an inmate's presence" required reversal. *Id.* at 215. In addition to explaining that the grievances were fully exhausted, the Third Circuit determined that all of the grievances must be considered because they were part of the prison record, addressed the same practice of improper handling of legal mail, and bore directly on the grievance appealed to final review. *Id.* at 216-17 (further rejecting the district court's conclusion that the failure to name individual defendants in the grievances amounted to an unexcused procedural default). In *Diaz*, the inmate submitted eight grievances related to the opening of legal mail. *Id.* at 216. "Taken together, these grievances suffice to state a claim for a pattern or practice of opening legal mail outside Diaz's presence," and "[t]he District Court should have considered them in its futility analysis." *Id.* (citation omitted) (footnote omitted).

However, the present matter does not involve the issue of exhaustion of administrative remedies. *See Id.* at 215-17. Diaz also named as defendants several supervisory officials, and according to the Third Circuit, "a reasonable factfinder could find that these defendants had knowledge of the violations through Diaz's grievances and acquiesced in the violations by failing to address a practice of opening legal mail outside of an inmate's presence." *Id.* at 215 (citations omitted) (stating, for example, that one defendant acknowledged receipt of nearly every one of Diaz's grievances). In contrast, Defendant Martin—the only Defendant named in this action—is not a supervisor, and, as the Court explains above, a reasonable factfinder could not find that she personally participated in the pre-2019 incidents.

Similarly, Defendant cannot be held responsible for the alleged failures of the Attorney General and other individuals to respond to Plaintiff's "letters and subpoena" seeking the identity

of the employee who processed the June 11, 2019 and June 17, 2019 Legal Correspondence. (Pl. Br. at 9.) The submissions, subpoenas, and orders were not directed at Defendant, who had not yet been served or named as a party in this proceeding, and there is no indication that she was even aware of such filings.

Citing to the Supreme Court's qualified immunity ruling in *Hope v. Pelzer*, 536 U.S. 730 (2002), Plaintiff further indicates that Defendant's actions were intentional and malicious because she violated NJDOC regulations by opening legal mail. (*See* Pl. Br. at 9.) However, in *Hope*, the Supreme Court did not rely on prison regulations to conclude that the defendants had a subjectively "improper motive," *see McCrimmon*, 2022 WL 17352193, at *5-6. Instead, applying the "objective immunity test of what a reasonable officer would understand," *Hope*, 536 U.S. at 747, the Court concluded that, "in light of binding Eleventh Circuit precedent, an Alabama Department of Corrections (ADOC) regulation, and a DOJ report informing the ADOC of the constitutional infirmity in its use of the hitching post, . . . the respondents' conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known,'" *id.* at 741-42 (quoting *Harlow*, 457 U.S. at 818); *see also id.* at 744 (observing that officers failed to comply with procedural requirements to keep a log, provide offers of water and bathroom breaks every fifteen minutes and had a history of ignoring provision allowing an inmate to join his assigned squad upon request).

Plaintiff also cites to a (non-binding) 1989 decision from the Northern District of Illinois rejecting a negligence defense on the grounds that the officer "purposely opened the envelopes, believing they were not legal mail." *Faulkner v. McLocklin*, 727 F. Supp. 486, 492 (N.D. Ill. 1989)); (Pl. Br. at 8). But Plaintiff presents no evidence indicating why Defendant opened the June 11, 2019 and June 17, 2019 Correspondence.

Likewise, although there is evidence that the mailroom staff was provided re-training and reminders regarding the procedures for handling legal mail (*see* McCrimmon Grievance R. at 8), there is no indication that Defendant was singled out for any special treatment. In fact, Defendant has received two commendations for her work. (Work History at 1-2.)

As Plaintiff notes (Pl. Br. at 9), Defendant did not print her name on the two June 2019 G-21 forms (and this form directs the processing to "Print *and* Sign"), and her signature was illegible (G-21 Forms at 1-2 (emphasis added)). However, Plaintiff provides no factual support for his conclusory assertions that "Defendant had *intentionally* failed to spell her name on the G-21 Form[s] even though she was required to do so, and signed her name with a scribble *in order to hide her identity*" (Pl. Decl. ¶ 8 (emphasis added)); Defendant *never* prints her name on the G-21 forms she signed (Pl. Br. at 3); or that she maliciously destroyed and discarded the June 2019 envelopes (except for the front part) "as acts of defiance towards the courts and to mock Plaintiff's constitutional rights" (*id.* at 13); *see also Martin*, 965 F. Supp. 2d at 527 (stating that summary judgment cannot be avoided by resorting to speculation). In particular, Plaintiff has no basis to offer anything but speculation as to the state of mind of Defendant at the time she processed the June 11, 2019 and June 17, 2019 Legal Correspondence and signed the forms. (*See* Pl. SMF ¶ 12; ECF No. 55-1 ¶ 12.)

In the end, given Plaintiff's failure to connect Defendant to any prior instances of improper handling of legal mail and the absence of any subsequent mail handling incidents at NJSP after June 17, 2019,[4] the evidence presented in connection with Defendant's summary judgment motion indicates that Defendant opened the legal mail twice over the course of a single week; she failed to print her name on the relevant forms and used an illegible signature; and had substantial

---

[4]     While Plaintiff states that his 2019 transfer from NJSP to EJSP was retaliatory, he does not claim that Defendant had any involvement in the transfer decision. (*See* Pl. Br. at 11.)

experience working in the mailroom (work for which she was commended and has not been formally disciplined) and, together with the other mailroom employees, was reminded of the procedures regarding legal mail. Viewing this evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor as the non-moving party, a reasonable juror could not find that Defendant possessed an improper motive. In fact, Defendant, who has never met Plaintiff, had no apparent reason for opening Plaintiff's legal mail. On the contrary, as Defendant points out (and Plaintiff does not dispute), NJSP houses over a thousand inmates, who can receive mail on a regular basis. (ECF No. 55 at 9.) Given the absence of specific evidence raising a triable issue of fact as to Defendant's improper motive, her actions in June 2019 thereby bear the "hallmarks of a busy employee who made mistake processing countless pieces of mail and working too quickly."[5] (*Id.*)

## 2. Pattern or Practice of Opening Legal Mail and Clearly Established Law

Because Plaintiff fails to present specific facts indicating that Defendant had an improper motive, Plaintiff's First Amendment claim triggers the "pattern or practice" requirement. In *McCrimmon*, Judge Martinotti concluded that, based on a review of the prior case law, "there is no clear precedent regarding how many instances of interference with legal mail constitutes a custom or practice" rising to the level of a First Amendment violation:

> Courts within the Third Circuit and other Circuits have declined to set a specific number of instances of interference with legal mail that would be presumed to be a pattern and practice that rises to the level of a constitutional violation, and therefore, decisions vary in the number of instances that constitute a violation. *See, e.g., Taylor v. Oney*, 196 F. App'x 126 (3d Cir. 2006) (not

---

[5]    In her reply brief, Defendant further asserts that "claims relating to incidents from 2016 through 2018 are time-barred by the two-year statute of limitations for Section 1983 claims." (ECF No. 55 at 5 n.2.) Because it concludes that Plaintiff fails to point to specific evidence raising a genuine issue of material fact as to Defendant's involvement in theses prior incidents, the Court need not (and does not) rule on Defendant's statute of limitation argument.

precedential) (holding that complaint stated a potential First Amendment claim where plaintiff alleged legal mail was opened outside of his presence on eight occasions over a four year period); *see also Rogers v. McKishen*, No. 13-3771, 2018 WL 3201784, at *7 (D.N.J. June 29, 2018) (noting five instances of opening of legal mail may be enough to establish a pattern or practices); *see Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) ("Two or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim.").

However, several courts have also found that mere isolated incidents of opening legal mail outside of an inmate's presence, without evidence of an improper motive, is insufficient to establish a First Amendment violation. *See, e.g., Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation."); [*Hale.*, 2010 WL 3791833, at *3] ("[O]pening [court mail] outside [prisoner's] presence on two occasions . . . does not demonstrate a pattern or practice of improper handling of his legal mail sufficient to find a First Amendment violation. . . . Isolated incidents of opening legal mail outside of an inmate's presence, without any evidence of improper motive, is nothing more than an assertion of negligence, and is insufficient to establish a constitutional violation."); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (finding two instances of mail interference did not give rise to a claim); *Cancel v. Goord*, No. 00-2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001) (dismissing claim where only two incidents of tampering alleged and no other indications of a continuing practice); *Beese v. Liebe*, 51 F. App'x 979, 981 (7th Cir. 2002) (dismissing First Amendment claim based on allegations that four pieces of legal mail had been opened outside of inmate's presence, since the inmate presented no evidence that his legal mail had been intentionally opened, and where the inmate-plaintiff merely speculated that the prison official intended to do so); *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997) (finding that isolated and inadvertent mishandling of legal mail not actionable); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (same); *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) (stating that "a few isolated instances of plaintiff's mail being opened out of his presence" that were "either accidental or the result of unauthorized subordinate conduct ... were not of constitutional magnitude").

*McCrimmon*, 2022 WL 17352193, at *6-7.

According to Judge Martinotti, "[McCrimmon] does not cite, nor has the Court found, a

published decision from the Supreme Court or the Third Circuit Court of Appeals holding that two, three, or even four instances of interference with legal mail over a nearly two-year period shows a custom or practice that violates the First Amendment." *Id.* at *7. "As such, [it is] not so clearly established that a reasonable person would have known that these sporadic instances showed a custom or policy that was violating Plaintiff's First Amendment rights." *Id.* This Court reaches the same conclusion as to the two "sporadic" instances in which Defendant interfered with Plaintiff's legal mail in June 2019.

Plaintiff contends that the record "belies" the Defendant's assertion that neither "she nor NJSP had a pattern or practice of opening legal mail outside the presence of inmates," noting that there were several prior incidents in which Plaintiff's and other inmates' legal mail was opened outside of their presence. (Pl. Br. at 10.) However, as the Court explains above, these previous incidents are not relevant to the present inquiry because a reasonable juror could not find that Defendant was personally involved in these prior instances, *see supra* Section III.A.1. This leaves Plaintiff with only two incidents or instances in which Defendant opened his legal mail: (1) on June 11, 2019, Defendant opened correspondence to Plaintiff from the Third Circuit; (2) on June 17, 2019, Defendant opened a district court mailing to Plaintiff. Plaintiff does not cite to a published decision from the Supreme Court, or the Third Circuit, holding that two instances of interference with legal mail in one week constitutes a pattern or practice violating the First Amendment. On the contrary, there is case law indicating that two isolated incidents do not satisfy the "pattern or practice" requirement.

For instance, in *Hale*, the plaintiff alleged that mail inspectors opened his legal mail outside of his presence on May 10, 2007, and then over one month later, on June 25, 2007. *Hale*, 2010 WL 3791833, at *1. The United States District Court for the Middle District of Pennsylvania

concluded that, "[i]n accepting plaintiff's allegations that his legal court mail was opened outside his presence on two occasions as true, such a claim does not demonstrate a pattern or practice of improper handling of his legal mail sufficient to find a First Amendment violation." *Id.* at *3 (further noting the plaintiff's contention that the opening of the mail was in accordance with a prison policy that the Third Circuit has upheld as reasonably related to a legitimate penological interest). Similarly, the Seventh Circuit upheld a district court order granting summary judgment in favor of the defendants where the inmate claimed four pieces of legal mail addressed to him were opened over a span of approximately two months. *Beese*, 51 F. App'x at 980-82. According to the *Beese* court: "Here, Bremmer opened three or four pieces outside of his presence. Negligence, however, does not rise to the level of a constitutional violation actionable under § 1983."[6] *Id.* at 981 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)).

---

[6]    Although not mentioned by the parties, the Court notes that, in 1995, the Third Circuit considered whether a plaintiff presented sufficient evidence of a pattern and practice to defeat the defendants' motion for summary judgment:

> Here, plaintiff's complaint alleged that on fifteen occasions defendants opened his legal mail outside his presence. In response to this motion, he supplied evidence documenting five instances in which his incoming court mail was opened in a three month period. Defendants admit that on three of the five occasions documented by plaintiff, they did open his incoming court mail outside his presence. Because we must view the facts in the light most favorable to plaintiff, the non-moving party, and draw all reasonable inferences therefrom, we conclude that there is sufficient evidence in the record for a reasonable person to infer that there exists a pattern and practice of opening plaintiff's incoming court mail outside his presence.

*Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *overruling on other grounds recognized by Gibson v. Erickson*, 830 F. App'x 372 (3d Cir. Dec. 2, 2020). The *Bieregu* court further concluded that, for purposes of the "clearly established right" prong of the qualified immunity doctrine, "the contours of defendants' legal obligations under the regulations and Constitution were sufficiently clear that a reasonable prison official would understand that repeatedly opening plaintiff's properly marked incoming court mail outside his presence violates the Constitution." *Id.* at 1459. However, in *Bieregu*, the inmate presented evidence of more than double the number of instances of

Accordingly, because it is not clearly established that her conduct violated the First Amendment, Defendant is entitled to qualified immunity. The Court grants summary judgment in favor of Defendant on Plaintiff's First Amendment individual-capacity claim for damages against Defendant.[7]

## B.    Injunctive Relief

In his Amended Complaint, Plaintiff requests that the Court issue an injunction ordering Defendant to refrain from: (1) opening and reading inmates' legal mail outside of their presence; (2) not printing her name on the G-21 forms; (3) further violations of Plaintiff's constitutional right; and (4) retaliating against Plaintiff. (ECF No. 18 at 11.) According to Defendant, Plaintiff's request for injunctive relief should be denied as moot because there is no ongoing violation. (ECF No. 50-3 at 12-16.) The Court agrees with Defendant.

---

interference with his legal mail than Plaintiff presents here (five versus two instances). Accordingly, the ruling does not make it "sufficiently clear that every reasonable official would have understood that what [Defendant] is doing violates that right," *McCrimmon*, 2022 WL 17351293, at *6 (quoting *Kane v. Barger*, 902 F.3d 185, 194 (3d Cir. 2018)).

[7]    Defendant further argues that Plaintiff's request for punitive damages "should be dismissed because Defendant did not exhibit reckless or callous conduct." (ECF No. 50-3 at 16 (emphasis omitted).) "The purpose of punitive damages is to punish [a] defendant for his willful or malicious conduct and to deter others from similar behavior." *Memphis Cmty. School Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986) (citations omitted). "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Plaintiff argues that he is entitled to punitive damages because the "record demonstrates that Defendant's Martin's actions were intentional, repetitive, and malicious." (Pl. Br. at 12.) Plaintiff reiterates the same assertions he raises in support of his argument that Defendant had an "improper motive" for purposes of the overall First Amendment claim (*e.g.*, he cites to *Hope* and claims that Defendant intentionally placed a scribble on the G-21 forms to hide her identity). (*See id.* at 12-15.)

Because she is entitled to qualified immunity on the damages claim in its entirety, the Court need not consider Defendant's argument regarding punitive damages. However, for substantially the same reasons it concludes that Defendant is entitled to summary judgment on the "improper motive" prong, the Court grants summary judgment in Defendant's favor as to Plaintiff's specific request for punitive damages.

As Judge Sheridan observed in the opinion screening the initial Complaint, "Plaintiff is no longer incarcerated at NJSP," and "[t]herefore his claim for prospective injunctive relief is now moot and is dismissed." *Cordero*, 2022 WL 605721, at *2 (citing *Williams v. Ann Klein Forensic Ctr.*, No. 18-9606, 2020 WL 614657, at *3 (D.N.J. Feb. 10, 2020)). Plaintiff argues that there is a reasonable expectation that his legal mail will continue to be read outside his presence. (Pl. Br. at 15); *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 31 (3d Cir. 1985) (stating a case may become moot if the alleged violation has ceased and there is no reasonable expectation that it will recur). In particular, Plaintiff asserts that, while incarcerated at EJSP, "a few months ago all of Plaintiff's legal documents—including the ones from this case—were confiscated, read outside his presence, and kept for almost a month;" he was forced to file a motion in one of his other pending district court cases to request the return of the documents; the Attorney General's office (which, at that time, was also representing Defendant in the present matter) talked to the prison administration and the documents were eventually returned to Plaintiff; and, because the Attorney General mooted Plaintiff's motion, there is no ruling preventing the NJDOC or its employees from continuing to read legal documents. (ECF No. 54 at 15-16.) However, Plaintiff's argument overlooks the absence of any evidence that Defendant, who has (only ever) been employed at NJSP (and not EJSP), interfered, or could interfere, with Plaintiff's legal mail following his transfer from NJSP to EJSP. Accordingly, the claim for injunctive relief must be dismissed as moot.

Furthermore, it is undisputed that sovereign immunity generally prohibits plaintiffs from suing states or state officials in their official capacities. *See Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020). The *Ex parte Young* doctrine provides a narrow exception permitting parties to sue a state official in his or her official capacity for

prospective injunctive relief to end an ongoing violation of federal law. *See id.* Accordingly, "remedies are limited to those that are 'designed to end a continuing violation of federal law.'" *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) (quoting *Green v. Mansour*, 474 U.S. 64, 73 (1985)). Because of Plaintiff's transfer from NJSP, Plaintiff cannot establish that Defendant is committing a continuing violation of federal law.

## IV.    **CONCLUSION**

For the reason set forth above, and other good cause shown, the Motion is **GRANTED**. Plaintiff's claims against Defendant are dismissed with prejudice. An appropriate Order follows.

GEORGETTE CASTNER
United States District Judge

Dated: May 29, 2025

28